No. 23-7174

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

HULLEY ENTERPRISES LTD., ET AL.,
*Appellees.*

v.

RUSSIAN FEDERATION,
*Appellant.*

On Appeal from the United States District Court
For the District of Columbia,
Case No. 1:14-CV-01996 (Hon. Beryl A. Howell)

**APPELLEES' REPLY BRIEF IN SUPPORT OF MOTION
TO EXPEDITE CONSIDERATION OF THE APPEAL**

Steven M. Shepard
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: (212) 336-8300

*Counsel for Appellees Hulley Enterprises Ltd., et al*

# TABLE OF CONTENTS

I. Introduction ...................................................................................................1

II. There is Public Interest in Expediting this Appeal .........................................3

III. Delay Risks Irreparable Injury to Petitioners Because the Russian Federation Will Refuse to Pay the Final Judgment. .........................................4

IV. This Appeal is Not Complex .........................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
  No. 05-cv-01548-RCL, ECF 268 (D.D.C. Feb. 27, 2023) ............................ 4, 11

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017) ..................................................................................... 5

*Chevron Corp. v. Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) .................................................................. 5, 12

*Lakeview Tech., Inc. v. Robinson*,
  446 F.3d 655 (7th Cir. 2006) (Easterbrook, J.) ........................................... 10

*LLC SPC Stileks v. Republic of Moldova*,
  985 F.3d 871 (D.C. Cir. 2021) .................................................................. 5, 12

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
  27 F.4th 771 (D.C. Cir. 2022) ................................................................... 5, 12

*United States v. Askins & Miller Orthopaedics, P.A.*,
  924 F.3d 1348 (11th Cir. 2019) .................................................................. 10

**Statutes**

Foreign Sovereign Immunities Act .......................................................... 5, 12, 13

**Rules**

Federal Rules of Appellate Procedure 27(d) and 32(g) .................................. 16

**Other Authorities**

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. 2023) ........... 10

Herbert Smith Freehills, *Crimean investment treaty arbitration claims* (Feb. 2020) ................................................................................................... 9

I.  **Introduction**

The motion to expedite should be granted because the legal issue in this appeal—whether the Russian Federation has sovereign immunity—is of great interest to the wider public. The Russian Federation does not and cannot dispute that its claims to sovereign immunity are the subject of robust public debate. The resolution of this appeal will affect that public debate no matter how this Court rules. The public's interest in this legal question is separate and apart from Petitioners-Appellees' ("Petitioners") private interest in obtaining compensation for the expropriation of their assets.

The instant appeal should also be expedited because further delay poses a great risk of "irreparable injury" to those private interests. Other victims of the Russian Federation, including the *Chabad* plaintiff litigating in this district, are likely to seize the Russian Federation's few remaining non-immune assets during the delay. The Russian Federation's only response is that Petitioners' "economic loss" does not "constitute irreparable harm" as a matter of law. Resp. Br., 15-16. But that principle of law *presupposes* the defendant can and will pay an eventual judgment. Here, the Russian Federation has made it crystal clear that its policy is to *never* pay these Arbitral Awards. Petitioners must therefore find and execute on Russian assets in order to obtain any compensation. If those assets are seized by others during the delay, that injury is irreparable.

1

*Third*, the Russian Federation is wrong that this appeal is so "complex" as to preclude expedited consideration. The caselaw is settled on the three elements of the "arbitration exception" to the Foreign Sovereign Immunities Act ("FSIA"), and under that caselaw the outcome is straightforward: the Russian Federation agreed to arbitrate and thus is *not* immune from this action. *See Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022); *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877–78 (D.C. Cir. 2021); *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204–06 (D.C. Cir. 2015). The district court's well-reasoned opinion is based on this caselaw and fully supported by the decision of the Arbitral Tribunal—a decision that is binding here because the Russian Federation expressly agreed that the Tribunal had the power to determine its own jurisdiction. If that were not enough, the Dutch Supreme Court and Court of Appeal in the Netherlands, the primary jurisdiction where the Russian Federation initiated set-aside proceedings, have also rejected all the Russian Federation's challenges to the Arbitral Tribunal's jurisdiction.

Petitioners' motion to expedite should be granted so that this nine-year-old action can proceed past the threshold step of resolving the Russian Federation's claim to sovereign immunity—a step that the Supreme Court has directed must be taken "as near to the outset of the case as is reasonably possible." *Bolivarian*

2

*Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017).

## II. There is Public Interest in Expediting this Appeal

The legal issue in this appeal is of great interest to many persons not before this Court. The Russian Federation misses the point by portraying Petitioners' *ultimate* goal—monetary compensation for the expropriation of their investments in Yukos—as being "in conflict" with the claims of other victims of the Russian Federation. Resp. Br., 10-12. In other words: Because the Russian Federation has wronged *so many* different people, it contends that no single victim's claims can be of interest to the wider public.

That response misses the broader point of Petitioners' motion, which is that the *legal issue itself* (and not Petitioners' compensation) is of significant public interest. The Russian Federation does not dispute that there is a "robust and ongoing debate" in the United States about seizing Russian assets to pay for the consequences of its violations of international law, including but not limited to the war in Ukraine. *Id.* at 14. This Court's ruling will have a significant impact on that debate *regardless* of whether Petitioners ultimately recover a cent from the Russian Federation.

The Russian Federation also contends that the public cannot be interested in the outcome of this appeal because a group of persons whom it pejoratively refers to as "Oligarchs," and who are not parties to the case, are allegedly wealthy and bad.

3

Resp. Br. 3-6, 10-12. It is a sign of desperation that the Russian Federation engages in these false *ad hominem* attacks that are irrelevant to the questions before the Court. Notably, the Russian Federation raised the same groundless allegations in the proceedings in the Netherlands, but the Dutch Courts rejected them as the basis for setting aside the Arbitral Awards. ECF 181-26 (Hague Court of Appeal Judgment) ¶ 9.8.8 (finding "no factual basis" for claim that Petitioners were "controlled" by these so-called "Oligarchs"); *id.* § 5.1.11.5 (finding that "illegal conduct," even if proven, does not affect the Tribunal's jurisdiction); *id.* § 5.1.11.6-8 (the alleged conduct does not affect jurisdiction); *id.* ¶¶ 5.1.7.1-5.1.7.4 (finding control of the shares irrelevant to question of whether Petitioners were "Investors" and their shares of Yukos were "Investments" protected by the ECT); ECF 204-8 (Dutch Supreme Court Judgment) ¶¶ 5.3.8, 11 (same).

### III. Delay Risks Irreparable Injury to Petitioners Because the Russian Federation Will Refuse to Pay the Final Judgment.

This appeal should also be expedited because delay poses a very significant risk of "irreparable injury" to Petitioners. The Russian Federation's few remaining non-immune assets in this country are likely to be seized by other victims of the Russian Federation during the delay.

The Russian Federation wrongly contends that Petitioners' "economic loss" cannot "constitute irreparable harm" as a matter of law. Resp. Br., at 15-16. But that rule applies *only* in cases in which the court can expect the defendant to pay an award

4

of money damages in full. That is manifestly *not* the case here, where the Russian Federation has repeatedly made clear that its policy is to *never* pay these Arbitral Awards. ECF 181 at 7-10. Indeed, in March 2020 the Russian Federation enacted a constitutional amendment, aimed precisely at these Arbitral Awards, to avoid paying Petitioners. This amendment gives the Russian Constitutional Court the power to block the Russian Government from making any payment ordered by a "foreign or an international arbitration court," if the Constitutional Court deems the payment to be "contrary to the foundations of the public order in the Russian Federation." ECF 181-8 (text of amendment). A Russian Senator who helped draft the amendment, and President Putin himself, both confirmed publicly that the amendment was directed at Petitioners' Arbitral Awards. ECF 181-10 at 2-3 (Senator stating that the amendment was a response to "the recent order of the Hague Court of Appeals mandating Russia to pay 50 billion dollars to the former shareholders of Yukos"); *id.* at 3 (Putin: "I fully agree"); *see also* ECF 181-12 (BBC article: "The constitutional amendment is aimed at refusing the $50 bn payout awarded to the former YUKOS shareholders").[1] There is every reason to expect the Russian Federation to invoke this amendment in order to not comply with a final judgment

---

[1] Such a ruling by the Constitutional Court would not affect this recognition proceeding—the Russian Federation cannot unilaterally amend either the Energy Charter Treaty or the New York Convention, much less make that amendment retroactive—but the ruling would allow the Russian Federation to argue that it is barred from actually paying the judgment entered by this Court.

5

by the court in this case. After all, in 2017, the Constitutional Court did just that in response to a judgment of the European Court of Human Rights ("ECtHR"), which directed the Russian Federation to pay €1.9 billion to all former Yukos shareholders. ECF 181-29.

The Russian Federation is also likely to use any delay in this case to procure additional judgments from its Constitutional Court aimed at preventing any payment to Petitioners. The Russian Federation previously employed this tactic during the set-aside proceedings: it used the time between the Dutch Court of Appeal's February 2020 judgment and a scheduled February 2021 hearing on appeal to the Dutch Supreme Court to procure a judgment from its own Constitutional Court, with the *express purpose* of attempting to undo the Court of Appeal's judgment. ECF 239 at 26-27 (citing ECF 242 ¶¶ 22-26).

The Russian Federation has continued to defy the ECtHR's judgment and the orders of other tribunals. Since 2015, the Russian Federation has a consistent record of refusing to pay arbitral awards arising from its expropriation of assets following the annexation of Crimea. ECF 181-28 at 6, 10-12 (Herbert Smith Freehills, *Crimean investment treaty arbitration claims* (Feb. 2020) (discussing arbitral awards against Russia totaling over $1.3 billion)). According to a July 2019 article in the Global Arbitration Review, "Russia appears to have failed to honor all of the awards in the public domain that have been rendered against it." ECF 181-30 ¶ 18.

6

Tellingly, the Russian Federation's Response Brief *does not dispute* its longstanding policy to "never pay" these Arbitral Awards—even though Petitioners' Motion invoked this policy as one reason why this appeal should be expedited. Mot. at 14. Not one word of the Response Brief gives any hint that the Russian Federation would comply with a final judgment from the district court.

Where, as here, there is a "likelihood that a defendant will never pay" a later money judgment, the plaintiff's economic loss is "irreparable." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359-60 (11th Cir. 2019) (holding that plaintiff showed irreparable harm because defendant was "effectively judgment-proof"); *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657-58 (7th Cir. 2006) (Easterbrook, J.) (plaintiff's "[a]bility to *calculate* damages does not make that remedy [of money damages] adequate . . . if the plaintiff cannot *collect* the award"); *see also* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1, at n.6 (3d ed. 2023) (collecting cases holding that a plaintiff's economic loss constituted irreparable harm due to defendant's inability or refusal to pay damages).

In short, the Russian Federation's opposition makes clear that this Court cannot expect the Russian Federation to comply with a final judgment of the district court. Instead, Petitioners will have to enforce that judgment by attempting to execute on non-immune Russian assets in this jurisdiction. Delay is thus an

7

"irreparable harm" because those assets are very likely to vanish, leaving Petitioners with no assets to seize to satisfy the eventual judgment.

The Chabad-Lubavitch movement is close to executing on two such assets—VEB.RF (a state development bank) and Tenex (a Russian State-owned uranium supplier). *See* Memorandum Opinion, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* No. 05-cv-01548-RCL, ECF 268 (D.D.C. Feb. 27, 2023), at 1-2. On February 27, 2023, Judge Lamberth directed Chabad to serve all defendants with the sanctions judgments before re-filing its motion to execute. *Id.* at 5, 21-22. Chabad has since effected that service, completing the last necessary step before execution can begin. *Id.*, Aff. of Service by U.S. Dep't of State, ECF 285 (D.D.C. Nov. 3, 2023).

The Russian Federation mentions that it appealed from the *Chabad* court's order. Resp. Br., at 18. There is no indication that the *Chabad* district court proceedings are stayed pending appeal—the parties have continued to file submissions. *See* No. 05-cv-01548-RCL, ECF 279-293. In any event, Petitioners' point stands: once Chabad's appeal concludes, that plaintiff will be on the point of executing on VEB.RF and Tenex. By contrast, once the instant appeal concludes, Petitioners will have to await the district court's resolution of the Russian Federation's other, non-FSIA defenses before Petitioners can obtain a final judgment to execute. In fact, Chabad already requested a hearing in this Court before April

8

15, 2024. *See* No. 23-7036 (D.C. Cir.), Doc. 2037916. Should this appeal be delayed beyond Chabad's requested April 2024 hearing date, Petitioners will be prejudiced.

### IV. This Appeal is Not Complex

This appeal is not "complex." The elements of the FSIA's "arbitration exception" are settled in this Circuit, and the District Court correctly applied those elements to find that exception applies here. *See Process & Indus. Devs. Ltd.*, 27 F.4th at 776; *LLC SPC Stileks*, 985 F.3d at 877–78; *Chevron Corp.*, 795 F.3d at 204–06.

In this appeal, this Court will have the benefit not only of Judge Howell's thorough and well-reasoned opinion, but also that of the Arbitral Tribunal, which held extensive evidentiary hearings before issuing a detailed judgment explaining why it had jurisdiction. Mot. at 5-6. Indeed, the Arbitral Tribunal's jurisdictional findings entirely dispose of the Russian Federation's FSIA defense since the Russian Federation repeatedly and expressly agreed that the Arbitral Tribunal had the power to determine its own jurisdiction. *See* District Court's Memorandum Opinion at 26-27. This Court will also have the benefit of the Dutch Court of Appeal's meticulous 2020 decision—which found, on *de novo* review, that the Arbitral Tribunal had jurisdiction pursuant to the Russian Federation's signature on the Energy Charter Treaty. ECF 240-1 (Dutch Court of Appeals' decision); ECF 204-2 ¶ 12. The Dutch

Supreme Court affirmed those findings. *See* ECF 204-2 ¶ 16 (citing ECF 240-5 ¶¶ 5.2.4, 5.2.7, 5.2.16, 5.2.20).

The Russian Federation claims to need more time to brief this appeal because it is a sovereign. Resp. Br. 20-21. But the Russian Federation has *already* briefed the FSIA issue at great length, and has *already* been reviewing the district court's November 17, 2023 order for more than two months. The Russian Federation does not give any specific or credible reason why it cannot file its opening brief within the next several weeks. The only reason given is that this case is purportedly "multijurisdictional." Resp. Br. at 21-22. But there is currently no deadline for further submissions from the Russian Federation in Luxembourg's courts. In the Dutch courts, the Russian Federation does not dispute that the sole remaining issue has nothing to do with the question of whether the Russian Federation agreed to arbitrate with Petitioners, *see* Mot. at 8 n.8, and the parties are currently awaiting the Amsterdam Court of Appeal's judgment, due in mid-February. The English High Court *already* decided on November 1, 2023 that the Russian Federation does not have sovereign immunity from Petitioners' action seeking to confirm the Arbitral Awards in England. Though the Russian Federation appealed that decision, its submissions are due on February 8, 2024, and will not interfere with this appeal. Meanwhile, the recognition proceedings in England continue in parallel to the Russian Federation's appeal. Those proceedings also do not conflict with an

10

expedited appeal here: the Russian Federation's substantive defense is due *tomorrow*, January 31, 2024, with a hearing scheduled before the High Court in June 2024.

In any event, the Russian Federation should be well-equipped to conduct these "multijurisdictional" proceedings while marshaling its resources for this appeal. In 2015, it set up a special organization to work with the Ministry of Justice and the Prosecutor General's Office of the Russian Federation to conduct multi-jurisdictional proceedings. *See* ECF 127-2 ¶ 1, 152-4 ¶ 1, 244-2 ¶ 1. And although the Russian Federation previously complained of purported difficulties in securing representation before United States Courts, it had no issue obtaining counsel with in-depth knowledge of this case and the related proceedings for this appeal: David Riesenberg has acted as the Russian Federation's counsel in the District Court proceedings since 2016, and his law firm, Pinna Legal, is headed by Andrea Pinna, who has assisted the Russian Federation in worldwide proceedings against Petitioners since 2015.[2] ECF 182-17 ¶ 2.

Dated: January 30, 2024　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Steven M. Shepard*
　　　　　　　　　　　　　　　　　　　Steven M. Shepard

---

[2] Mr. Pinna was awarded the "Order of Friendship" by President Putin for these legal services in 2019. *See Curriculum Vitae of Andrea Pinna*, https://pinna-legal.com/wp-content/uploads/2022/06/Andrea-PINNA-CV-English-2022.pdf.

11

Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: (212) 336-8300
sshepard@susmangodfrey.com

*Attorney for Appellees*

## CERTIFICATE OF COMPLIANCE

I, Steven Shepard, counsel for appellees Hulley Enterprises Ltd. et al., and a member of the Bar of this Court, certify pursuant to Federal Rules of Appellate Procedure 27(d) and 32(g), that the foregoing Motion to Expedite is proportionally spaced, has a typeface of 14 points or more, and contains 2,600 words.

/s/ *Steven M. Shepard*
Steven M. Shepard

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: January 30, 2024  /s/ *Steven M. Shepard*
Steven M. Shepard

*Attorney for Appellees Hulley Enterprises Ltd. et al.*