[ORAL ARGUMENT NOT YET SCHEDULED]

No. 23-7174

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

HULLEY ENTERPRISES LTD., YUKOS UNIVERSAL LIMITED, VETERAN
PETROLEUM LTD.,

*Petitioners-Appellees,*

*v.*

RUSSIAN FEDERATION,

*Respondent-Appellant.*

*On Appeal from the U.S. District Court for the District of Columbia
No. 1:14-cv-01996-BAH, Hon. Beryl A. Howell*

Brief of *Amici Curiae* Charles N. Brower, Harold Hongju Koh, and
Diane Desierto in Support of Petitioners-Appellees

Hyland Hunt
Ruthanne M. Deutsch
DEUTSCH HUNT PLLC
300 New Jersey Ave. NW, Ste. 900
Washington, DC 20001
(202) 868-6915
hhunt@deutschhunt.com

*Counsel for* Amici Curiae

i

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and Amici**

Appellees' brief lists all parties, intervenors, and amici except for the following additional amici for Appellees: Charles N. Brower, Harold Hongju Koh, and Diane Desierto, appearing in this brief.

**B.    Ruling Under Review**

Appellees' brief accurately references the rulings at issue.

**C.    Related Cases**

All related or consolidated cases are identified in Appellees' brief.

  /s/Hyland Hunt
  Hyland Hunt

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES................i

TABLE OF AUTHORITIES....................................................... iii

INTEREST OF *AMICI CURIAE* ........................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................7

ARGUMENT .....................................................................10

I.  The Application of Issue Preclusion to an Already Confirmed Foreign Arbitral Award Is Exceptionally Important...............................................10

II.  The New York Convention Authorizes U.S. Courts to Apply Issue Preclusion to the Decisions of Courts of Primary Jurisdiction Confirming Foreign Arbitral Awards.................................................................13

III.  Applying Issue Preclusion to Primary Jurisdiction Decisions Confirming Foreign Arbitral Awards Serves the Purposes of the New York Convention, Comity, and the Strong Federal Interest in Expeditious Dispute Resolution. ....................................................................16

   A. The New York Convention Framework Favors Deference to the Decisions of the Courts of Primary Jurisdiction Confirming Foreign Arbitral Awards. ..........................................................16

   B. Principles of Comity Favor the Application of Issue Preclusion Where, as Here, the Dispute Is Governed by Foreign Law.....................19

   C. Issue Preclusion Furthers the Purpose of International Arbitration, Which Is to Resolve Disputes Expeditiously. .........................................20

CONCLUSION ....................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**U.S. Cases**

*Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461 (2004).........................13

*Am. Banana Co. v. United Fruit Co.*, 213 U.S. 347 (1909)....................................20

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33 (2018)..........19

*Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua S.A.B. De C.V.*, 58 F.4th 429 (10th Cir. 2023).....................................................18

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56 (2d Cir. 2022)................................................................................................18

*Europcar Italia, S.p.A. v. Maiellano Tours Inc.*, 156 F.3d 310 (2d Cir. 1998) ........17

*GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020) ...............................................................................15

*Getma Int'l v. Republic of Guinea*,
862 F.3d 45 (D.C. Cir. 2017) ..............................................................................18
142 F. Supp. 3d 110 (D.D.C. 2015) .....................................................................21

*Gretton Ltd. v. Republic of Uzbekistan*, No. CV 18-1755 (JEB), 2019 U.S. Dist. LEXIS 18990 (D.D.C. Feb. 6, 2019)......................................................................21

*Hulley Enters. Ltd. v. Russian Fed'n*,
No. CV 14-1996, 2023 U.S. Dist. LEXIS 206199
   (D.D.C. Nov. 17, 2023) .................................................................... 2, 7, 12
502 F. Supp. 3d 144 (D.D.C. 2020).....................................................................21

*In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98 (D.C. Cir. 2002) .....11

*In re Telcordia Techs., Inc. v. Telkom SA, Ltd.*, 95 F. App'x 361
(D.C. Cir. 2004) ................................................................................................21

*Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313
(2d Cir. 1973) ...................................................................................................19

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004) ...................................................................8

*LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021) ....... 12, 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
473 U.S. 614 (1985) .................................................................................... 10, 20

iii

*Montana v. United States*, 440 U.S. 147 (1979) ................................................ 13, 14

*Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-CV-01148 (TSC), 2020 U.S. Dist. LEXIS 12794 (D.D.C. Jan. 27, 2020) ...........................21

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.,* 957 F.3d 487 (5th Cir. 2020) ........17

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ......................................... 20, 21

*Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 29 F.3d 79 (2d Cir. 1994)................................................................................................18

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) ..............12

*Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179 (D.D.C. 2016) ....................21

*Tahan v. Hodgson*, 662 F.2d 862 (D.C. Cir. 1981)...........................................19

*Termorio S.A. v. Electranta S.P.,* 487 F.3d 928 (D.C. Cir. 2007)............... 16, 17, 18

*Thai-Lao Lignite (Thailand) Co. v. Government of the Lao People's Democratic Republic,* 864 F.3d 172 (2d Cir. 2017) .........................................18

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997)...................................................................................... 16, 17

**Foreign Cases**

*Hulley Enterprises Ltd. v. Russian Federation,* No. CL-2015-000396 (High Court of Justice Business and Property Courts of England and Wales Commercial Court King's Bench Division Nov. 1, 2023) ......................................................15

*Republic of India v. Deutsche Telekom AG,* [2023] SGCA (I) 10, ¶ 4 (Singapore Court of Appeal) ..............................................................................................15

*Russian Federation v. Hulley Enterprises Ltd.,* No. 22/03139 (Supreme Court of the Netherlands Mar. 22, 2024) ..............................................................14

*Russian Federation v. Veteran Petroleum Ltd.,*
No. 20/01595 (Supreme Court of the Netherlands Nov. 5, 2021)........................2
Nos. C/09/477160/HA ZA 15-1 et al. (Hague District Court Apr. 20, 2016) ........2

*Veteran Petroleum Ltd. v. Russian Federation,*
No. 200.197.079/01 (Hague Court of Appeal Feb. 18, 2020)................................2
No. 200.303.104/01 (Amsterdam Court of Appeal Feb. 20, 2024).....................14

**Statutes and Treaties**

9 U.S.C. §§ 201-208......................................................................................14

28 U.S.C. § 1391(f).......................................................................................11

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June
    10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38................................................... 14, 16

**Other Authorities**

William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev.
    2071 (2015)....................................................................................................19

Renato Nazzini, *Enforcement of International Arbitral Awards: Res Judicata, Issue
    Estoppel, and Abuse of Process in A Transnational Context*, 66 Am. J. Comp. L.
    603 (2018).......................................................................................... 16, 17, 22

Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.8..........................11, 15, 19

United Nations Conference on Trade and Development, *Investment Dispute
    Settlement Navigator-Advanced Search* ..............................................................11

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are experienced arbitrators, scholars, and counsel who work in the fields of international law, international dispute settlement, and international arbitration. They have no stake in the outcome of this litigation and state no position on any issue but the applicability of the principle of issue preclusion.

*Amici* submit this brief to urge this Court to establish essential precedent that in a proceeding to confirm a foreign arbitral award, issue preclusion bars re-litigation of questions conclusively resolved by the courts of the arbitration's original seat. *Amici* feel compelled to opine here because the re-litigation below of already decided issues threatens the viability of international arbitration as an effective and expeditious dispute resolution mechanism. Applying issue preclusion is essential to ensure the viability of U.S. enforcement of foreign arbitration awards like this one, where the court of primary jurisdiction has already confirmed the award, and wholly resolved and rejected the set-aside challenges now being redundantly asserted by the Russian Federation.

As this case vividly illustrates, if the principle of issue preclusion is not applied here, U.S. courts (and the parties) will squander endless time and resources on matters already long settled by the courts best suited to decide them. After the

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amici curiae* or their counsel contributed money that was intended to fund this brief's preparation or submission. *See* Fed. R. App. P. 29(a)(4)(E).

Russian Federation itself sued in Dutch courts to set aside three Dutch arbitral awards (the "Final Awards"), the Supreme Court of the Netherlands affirmed the Hague Court of Appeal's denial of the Russian Federation's petition, holding that the Russian Federation agreed to arbitrate Petitioners'-Appellees' claims.[2] Despite this final decision, the Russian Federation sought a second bite at the apple in U.S. courts, putting the same no-agreement arguments to the district court.[3] The district court should have dismissed those repetitive arguments under the familiar principle of issue preclusion. Instead, because the district court opted to forgo issue preclusion here, it was forced to spend several years and sixty pages to resolve issues that had already been fully aired and finally rejected in competent Dutch courts.

If uncorrected and repeated, the lower court's failure to apply issue preclusion will be devastating to global efforts to enforce valid arbitral awards. Even if Russia's arguments fail on the merits (as they did in the Netherlands, and in the district court), the lower court's decision to consider them afresh unwisely put the court's

---

[2] *Russian Federation v. Veteran Petroleum Ltd.,* No. 20/01595 (Supreme Court of the Netherlands Nov. 5, 2021), official English translation at https://tinyurl.com/4ce6dje5; *Veteran Petroleum Ltd. v. Russian Federation,* No. 200.197.079/01 (Hague Court of Appeal Feb. 18, 2020), unofficial English translation at https://tinyurl.com/bdfffu4y; *Russian Federation v. Veteran Petroleum Ltd.,* Nos. C/09/477160/HA ZA 15-1 et al. (Hague District Court Apr. 20, 2016), unofficial English translation at https://tinyurl.com/54y53vrk.

[3] It might more aptly be termed a sixth bite at the apple, given similar attempts to re-litigate issues in several other countries. *See Hulley Enters. Ltd. v. Russian Fed'n,* No. CV 14-1996, 2023 U.S. Dist. LEXIS 206199, *4 (D.D.C. Nov. 17, 2023).

imprimatur on a playbook for delay for any party seeking to put off enforcement of confirmed arbitration awards. Such delay would force ever more litigation costs on parties who prevailed in arbitration and have already successfully resolved set-aside claims. To prevent unconscionable delay that would make a mockery of the predictability, certainty, and expedition promised by both the New York Convention and its implementing legislation, *amici* urge this Court to take this important opportunity to correct the lower court's omission by applying issue preclusion here.

Profiles of *amici* follow.

The **Honorable Judge Charles N. Brower** has served continuously since 1983 as a Judge of the Iran-United States Claims Tribunal in The Hague and from 2014-2022 as the most-appointed American Judge *ad hoc* of the International Court of Justice in The Hague. He also has served as Judge *ad hoc* of the Inter-American Court of Human Rights in San Jose, Costa Rica, and as a frequent Arbitrator or President of the Arbitral Tribunal at the World Bank Group's International Centre for Settlement of Investment Disputes. Since 2001 Judge Brower has been an Arbitrator Member of London's Twenty Essex (barristers) Chambers. Judge Brower is a Chartered Arbitrator of the London-based Chartered Institute of Arbitrators (its highest rank). He is also a listed arbitrator with various international arbitration institutions.

Judge Brower earlier had served in the United States Department of State, including as Deputy Legal Adviser (1971-1972), Acting Legal Adviser (1973), and in 1987 as sub-Cabinet-ranked Deputy Special Counsellor to the President of the United States. In more than 60 years of active international law and international dispute resolution practice, Judge Brower has also authored or been cited in thousands of books, law review articles, and other publications. He was an Adviser to the American Law Institute's *Restatement of the Law (Third), The Foreign Relations Law of the United States*.

**Professor Harold Hongju Koh** is Sterling Professor of International Law at Yale Law School and served as its fifteenth Dean from 2004-2009. After clerking for Judge Malcolm Richard Wilkey of this Court, and Justice Harry A. Blackmun on the Supreme Court, he served four U.S. presidential administrations of both parties over five decades. From 1983 to 1985, he served as Attorney-Adviser in the Justice Department's Office of Legal Counsel. From 1998-2001, he served as Assistant Secretary of State for Democracy, Human Rights and Labor. In 2009 to 2013, he again served the United States Department of State as its 22nd Legal Adviser, for which he received the Secretary of State's Distinguished Service Award. In 2021, he returned to the State Department as Senior Adviser, the highest-ranking political appointee in the Office of the Legal Adviser, at the start of the Biden Administration.

Professor Koh is one of the country's leading experts in public and private international law, transnational procedure, national security law, and human rights. He has received 18 honorary degrees, authored or co-authored nine books, published more than 250 articles, testified regularly before Congress, served as arbitrator and litigated in numerous arbitral forums, and litigated numerous cases involving international law issues in both U.S. and international courts. In January 2023, Professor Koh was selected by the American Law Institute as Co-Chair of the team to complete the *Restatement of the Law (Fourth), The Foreign Relations Law of the United States*.

**Professor Dr. Diane A. Desierto** is Professor of Law and Global Affairs, tenured at both Notre Dame Law School and the Keough School of Global Affairs at the University of Notre Dame. In addition to teaching courses on international law and international dispute resolution, she serves as the Faculty Director of Notre Dame Law School's LLM Program in International Human Rights Law and the Founding Director of the Law School's Global Human Rights Clinic. She is a Faculty Fellow in various institutes of the Keough School of Global Affairs and co-directs the Notre Dame Reparations Design and Compliance Lab.

A member of the Editorial Boards of the European Journal of International Law, the Journal of World Investment and Trade, and International Law Studies, Professor Desierto has served as Faculty of the Hague Academy of International Law

several times since 2017, when she served as Director of Studies. Professor Desierto has authored or co-authored over 200 published works and served as Visiting Professor on international arbitration, international law, international human rights law, and international economic law at law schools around the world. Professor Desierto clerked at the International Court of Justice at the Hague, practices before various international courts and tribunals, and co-authored the United Nations' Draft Covenant on the Right to Development, the 2012 ASEAN Declaration of Human Rights, and the 2019 Hague Rules on Business and Human Rights Arbitration.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal seeks to re-litigate a question that the Russian Federation had already *lost with finality* in the courts of the seat of arbitration (the Netherlands): namely, whether the Russian Federation ever agreed to arbitrate in the first place. Those arguments are identical to arguments the Russian Federation presented to Dutch courts more than six years ago in a failed effort to set aside the awards. Because the Dutch courts decisively rejected those arguments, the Russian Federation should have been precluded from re-litigating these issues in U.S. courts.

Instead, footnote 17 of the lower court's opinion stated only that the court "*need not … address*[]" whether it "should accord issue-preclusive effect to the decisions of the Dutch courts rejecting the Russian Federation's attempts to set aside the Final Awards" because "*the jurisdictional question is resolved on alternative grounds*." *Hulley Enters. Ltd.*, 2023 U.S. Dist. LEXIS 206199 at *51 n.17 (internal quotation marks omitted). *Amici* submit that this Court should now seize the opportunity that the district court avoided and short circuit a costly cycle of endless re-litigation of already resolved questions by applying the principle of issue preclusion to resolve this case. Silence on the applicability of issue preclusion—which goes to the heart of judicial efficiency—will only invite foreign arbitral parties who have lost set-aside cases in the court of primary jurisdiction to continue to stall award enforcement with multiple-bite arguments that waste judicial resources and

7

burden parties with precisely the kind of protracted litigation that arbitration is supposed to avoid.

Hornbook law teaches that issue preclusion or collateral estoppel forbids a party to a prior proceeding from re-litigating an issue of fact or law that was actually litigated and necessarily determined in a prior proceeding that was final, valid, and on the merits. That principle operates to bar a party to a prior action from re-raising to a second court the exact same issue it argued and lost in prior proceedings before the court of primary jurisdiction, thereby avoiding *"*internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 294 (5th Cir. 2004). Rather than sidestepping this important issue, this Court should affirm on the grounds that the U.S. procedural principle of issue preclusion forbids the Russian Federation, as a party to the prior Dutch proceeding, from re-litigating issues of fact or law seeking to set aside the Dutch arbitral award that were actually litigated and necessarily determined against it in the prior final and valid Dutch proceeding.

For three reasons, the New York Convention and its implementing domestic legislation authorize U.S. courts to apply the procedural rule of issue preclusion in

proceedings like this one, that are brought to recognize an arbitral award under the Convention that has been confirmed by the courts of the seat of the arbitration.

First, especially with regard to confirmation decisions, the system of international arbitration award enforcement established by the New York Convention gives greatest authority to the courts of the primary jurisdiction, the country in which the arbitration was originally held. The primary jurisdiction is the only court system with the authority to set aside the award. The litigants themselves typically choose the arbitral seat, as they did here, thereby also choosing the courts of the primary jurisdiction. When enforcement of any subsequent confirmed award comes before courts in the secondary jurisdiction—here, the court below—the enforcing court should defer to the decisions of the courts of the primary jurisdiction—the forum that the parties themselves decided should wield the binding power to set aside (or not) any awards resulting from their arbitration.

Second, in such cases, principles of comity are best served by deferring to resolution of foreign legal issues by the courts most familiar with them. The Russian Federation's (repeatedly failed) merits arguments here concern the proper interpretation of the Energy Charter Treaty, a treaty to which the Netherlands, but not the United States, is a State Party. Although less deference may be due to the courts of the primary jurisdiction when uniquely U.S. legal principles or policies are at stake, that is decidedly not the case here.

9

Third, the Supreme Court has emphasized that the system of international arbitration is designed for expeditious resolution of disputes. The "emphatic federal policy in favor of arbitral dispute resolution" applies "with special force in the field of international commerce" to realize the "potential of [arbitral] tribunals for efficient disposition of legal disagreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 631, 638 (1985). This core purpose of efficiency is undermined when the losing side is permitted to re-litigate endlessly issues that have already been conclusively resolved by the courts of primary jurisdiction. The district court stayed this case *for six years* to gain the benefit of the Dutch courts' judgments—in proceedings that the Russian Federation initiated and lost in those very courts. It would frustrate the purpose of the New York Convention—and needlessly disrupt the broader system of international arbitration—to hand the Russian Federation endless "do overs" of arguments that the Dutch courts have thoroughly considered, decided, and rejected in a valid final judgment.

## ARGUMENT

### I.     The Application of Issue Preclusion to an Already Confirmed Foreign Arbitral Award Is Exceptionally Important.

The egregious delay in this case—and the prolongation of that delay by the lower court's failure to apply issue preclusion—illustrates why this Court should bar a party defending against award enforcement from re-litigating award-validity issues

10

that courts in the primary jurisdiction fully aired and conclusively resolved against them. The Court's consideration of the question is warranted, notwithstanding the district court's failure to reach it, because the issue-preclusion question is a "fundamental issue of law" that is "important both to the specific litigation and generally." *Cf. In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002) (interlocutory review criteria).

Although statutory authority and expert opinion agree that issue preclusion applies in cases like this one, *see* Part II, *infra*, this Circuit's clear resolution of this issue would provide needed precedent on a recurring issue. Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.8 reporters' note cmt. c(iii). Investor-state arbitrations grow ever more common, with about 80 initiated each year. *See* United Nations Conference on Trade and Development, *Investment Dispute Settlement Navigator-Advanced Search*, https://tinyurl.com/3uxexhhf (over 800 proceedings initiated since 2013). As a global financial center where foreign sovereign assets are likely to be found, the United States is a crucial enforcement jurisdiction for any resulting arbitral awards. And the District Court for the District of Columbia is the default venue for bringing actions against a sovereign, and typically the *only* available venue in confirmation actions arising from investor-state arbitrations, where the underlying dispute typically involves actions taken overseas with no connection to the United States. *See* 28 U.S.C. § 1391(f).

11

The New York Convention is intended to achieve the "expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 879-80 (D.C. Cir. 2021). But failure of this jurisdiction's courts to apply settled issue preclusion rules fatally undermines the Convention's goals by leaving the door open to endless re-litigation of questions already settled by courts with the expertise and authority to conclusively resolve them.

As described below, *see* Section III.C, *infra*, district courts routinely stay enforcement petitions pending resolution of set-aside cases in the primary jurisdiction, which often means litigation is put on hold for years—just as this case "has now consumed judicial resources in the District of Columbia for almost a decade." *Hulley Enters. Ltd.*, 2023 U.S. Dist. LEXIS 206199 at *4. Such stays can foster judicial economy, but *only if the court of secondary jurisdiction deems the primary jurisdiction's confirmation decision to be preclusive.* If not—and the long stay simply means that the losing party gets to start over anyway—the resulting delay destroys any notion of expeditious dispute resolution. Just as "the court properly takes the less burdensome course" when choosing among threshold issues to decide a case, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007), judicial economy—and the burden on the parties—strongly favors taking the less burdensome course of applying issue preclusion when the primary

jurisdiction has already confirmed an award. Justice delayed is justice denied. The Court should take this important opportunity to close the door to such destructive and abusive revolving-door litigation.

## II. The New York Convention Authorizes U.S. Courts to Apply Issue Preclusion to the Decisions of Courts of Primary Jurisdiction Confirming Foreign Arbitral Awards.

The principle of issue preclusion is a "fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata." *Montana v. United States*, 440 U.S. 147, 153 (1979). Under this bedrock procedural principle, a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction … cannot be disputed in a subsequent suit between the same parties or their privies." *Id.* (citations omitted). The principle applies against sovereigns as well as private parties. *Id.* at 163-64 (applying preclusion to the United States); *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 490 n.14 (2004) ("Preclusion principles ... unquestionably do apply against the United States.").

This appeal's central issue—whether the Russian Federation agreed to arbitrate—was put in issue and directly determined by a final judgment in the Dutch courts. In holding that the Russian Federation agreed to arbitrate, the Dutch courts considered (and rejected) each of the contrary arguments that the Russian Federation tries to resuscitate here. The Dutch courts' final judgment is entitled to *res judicata*

13

effect under Dutch law,[4] and Dutch courts have already issued "exequaturs," making the awards ripe for enforcement and execution.[5] This satisfies the hornbook requirements for issue preclusion. *See Montana*, <u>440 U.S. at 153</u>.

The New York Convention authorizes the Court to apply the procedural rule of issue preclusion to the Dutch court's decision. Article III of the Convention expressly authorizes U.S. courts to follow their own procedural rules, including issue preclusion: "Each Contracting State shall recognize arbitral awards as binding and enforce them *in accordance with the rules of procedure of the territory where the award is relied upon*"—*i.e.*, the jurisdiction in which a petition to enforce the arbitral award is filed—"under the conditions laid down in the" treaty. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, Art. III, 21 U.S.T. 2519, 330 U.N.T.S. 40 (emphasis added). Congress has implemented the New York Convention by enacting Chapter 2 of the Federal Arbitration Act, 9 U.S.C.

---

[4] *Russian Federation v. Hulley Enterprises Ltd.,* No. 22/03139, ¶ 3.4 (Supreme Court of the Netherlands Mar. 22, 2024) ("[T]he Supreme Court's judgment of 5 November 2021, namely that the court of appeal's finding that the arbitral awards cannot be set aside due to the absence of a valid arbitration agreement, has become irreversible.").

[5] The "exequaturs" grant Petitioners-Appellees leave to enforce the Final Awards in the Netherlands. *See Hulley Enters. Ltd. v. Russian Fed'n,* No. CV 14-1996, <u>Dkt. No. 240-2</u> ¶ 123 (declaration of Dutch counsel). In a February 2024 judgment, the Amsterdam Court of Appeal rejected arguments related to alleged procedural fraud in the issuance of the Final Awards. *See Veteran Petroleum Ltd. v. Russian Federation,* No. 200.303.104/01, ¶ 7 (Amsterdam Court of Appeal Feb. 20, 2024).

§§ 201-208, thereby lending statutory authority to any decision by a federal court to apply the doctrine of issue preclusion. *GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC,* 140 S. Ct. 1637, 1644 (2020).

Given this authority, the Restatement (Third) of the U.S. Law of International Commercial Arbitration expressly endorses applying the principle of issue preclusion: "[A] U.S. court [when] requested to grant post-award relief … [should] give[] issue-preclusive effect to those findings [of the primary jurisdiction] *that are relevant to challenges to the award in the recognition and enforcement proceeding*." Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.8 cmt. c(ii). Other secondary jurisdictions enforcing arbitral awards under the New York Convention agree and have given preclusive effect to primary jurisdiction decisions. The Singapore Court of Appeal has applied issue preclusion in circumstances that parallel those here, and that the High Court of England and Wales has done so for the same Final Awards that are the subject of this appeal.[6] The authority granted by the New York Convention and its implementing legislation thus authorize this Court to give issue preclusive effect to the Dutch courts' rulings rejecting Russia's request for set-aside in these proceedings.

---

[6] *Hulley Enterprises Ltd. v. Russian Federation,* No. CL-2015-000396, ¶¶ 48, 53 (High Court of Justice Business and Property Courts of England and Wales Commercial Court King's Bench Division 1 Nov. 2023); *Republic of India v. Deutsche Telekom AG,* [2023] SGCA (I) 10, ¶ 4 (Singapore Court of Appeal).

In short: United States' rules of civil procedure should apply in a proceeding, like this one, to confirm a foreign arbitral award under the New York Convention. Those rules include the well-established civil procedure principle of issue preclusion. The lower court missed its opportunity do so, but this Court can—and for the reasons stated below should—now apply that principle here.

**III.    Applying Issue Preclusion to Primary Jurisdiction Decisions Confirming Foreign Arbitral Awards Serves the Purposes of the New York Convention, Comity, and the Strong Federal Interest in Expeditious Dispute Resolution.**

**A. The New York Convention Framework Favors Deference to the Decisions of the Courts of Primary Jurisdiction Confirming Foreign Arbitral Awards.**

The Dutch courts' role in this dispute as the courts of primary jurisdiction favors the application of issue preclusion with respect to their key rulings. A country "in which, or under the [arbitration] law of which, [an] award was made" has primary jurisdiction. New York Convention, Art. V(1)(e), 21 U.S.T. 2520, 330 U.N.T.S. 42. The primary jurisdiction court "has supervisory jurisdiction in that it can entertain an application to set aside the award." Renato Nazzini, *Enforcement of International Arbitral Awards: Res Judicata, Issue Estoppel, and Abuse of Process in A Transnational Context*, 66 Am. J. Comp. L. 603, 629 (2018). It can therefore "set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Termorio S.A. v. Electranta S.P.,* 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys*

"R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)). If the award is set aside, the parties are no longer bound by it. Nazzini, *supra*, at 629.

By contrast, an enforcement court in a secondary jurisdiction (like the district court here) does not have the authority to annul the award, only to decline to enforce it. *Termorio S.A.*, 487 F.3d at 935; *OJSC Ukrnafta v. Carpatsky Petroleum Corp.,* 957 F.3d 487, 497 (5th Cir. 2020). In addition, it may refuse enforcement only on the limited "grounds explicitly set forth in Article V of the Convention." *Termorio*, 487 F.3d at 935 (quoting *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23). And a non-enforcement decision by a secondary jurisdiction is not binding in other jurisdictions. Nazzini, *supra*, at 629.

In short, as the courts of secondary jurisdiction, the U.S. courts have the "limited scope of review allowed under the [New York] Convention" in this enforcement action. *Europcar Italia, S.p.A. v. Maiellano Tours Inc.*, 156 F.3d 310, 317 (2d Cir. 1998). This procedural reality "favors [this court's] deference to proceedings in the originating country that involve less deferential standards of review." *Id*. A "foreign court well-versed in its own law is better suited to determine the validity of the award," *id.*, so when, as here, the court of primary jurisdiction has confirmed an award, and done so after full review, its conclusion merits deference by this Court.

Of course, deference is not owed to set-aside decisions that "violate the United States's most basic norms of morality and justice." *Getma Int'l v. Republic of Guinea,* 862 F.3d 45, 49 (D.C. Cir. 2017).[7] But this Court has deferred to the courts of the primary jurisdiction where the parties were merely asking the secondary jurisdiction to "routinely second-guess the judgment of a court in a primary State." *Termorio S.A.*, 487 F.3d at 937. The Second Circuit has done the same. *See e.g.*, *Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,* 40 F.4th 56, 73-77 (2d Cir. 2022); *Thai-Lao Lignite (Thailand) Co. v. Government of the Lao People's Democratic Republic,* 864 F.3d 172, 183-84 (2d Cir. 2017).

The same or greater deference is due where, as here, the court of primary jurisdiction confirms an award and conclusively rejects a set-aside request. Applying the principle of issue preclusion to confirmation decisions accords with the primary jurisdiction's expertise and its principal role under the New York Convention. Other courts of appeals have recognized as much, in related contexts. For example, the Second Circuit has permitted award-creditors to enforce a primary-jurisdiction confirmation decision by treating the confirmation decision as a money judgment separate and apart from the underlying arbitral award. *See, e.g.*, *Seetransport Wiking*

---

[7] For example, the Tenth Circuit affirmed a district court decision declining "to vacate an order confirming an arbitral award that [was] later … annulled" by a court in the primary jurisdiction because "giving effect to the annulment would undermine U.S. public policy." *Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua S.A.B. De C.V.*, 58 F.4th 429, 454 (10th Cir. 2023).

*Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 29 F.3d 79, 82 (2d Cir. 1994); *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1323 (2d Cir. 1973). In the current case, issue preclusion provides a quicker, more certain and straightforward path to achieving the same deference. *See* Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.8 cmt. c(ii).

### B. Principles of Comity Favor the Application of Issue Preclusion Where, as Here, the Dispute Is Governed by Foreign Law.

Applying issue preclusion here also follows this Court's previous invocation of "comity" when granting preclusive effect to the judgments of foreign courts. *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981). "Adjudicative comity," or deference to foreign tribunals, operates as a "principle of restraint" on U.S. courts. William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev. 2071, 2105 (2015). In "the spirit of 'international comity,' a federal court should carefully consider a foreign state's views about the meaning of its own laws." *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 43 (2018) (citation omitted).

Principles of comity counsel strongly in favor of giving preclusive effect to the Dutch decisions here confirming foreign arbitral awards. The comity lens is particularly apt when, in a proceeding to confirm a foreign award, U.S. courts are asked to second-guess the legal decisions of the court of primary jurisdiction. Here, the Netherlands is a State Party to the Energy Charter Treaty; the United States is

19

not. The Dutch courts definitively interpreted that treaty, which binds their government, in the set-aside proceedings, rendering final decisions (through all levels of appeal) on the meaning of several provisions relevant to the existence of an agreement to arbitrate. The Russian Federation now asks this Court to instruct the district court to re-examine *de novo* those same interpretations regarding an unfamiliar treaty and then reverse them. Opening Br. 42-56. But a U.S. judgment holding that years after the fact, the Dutch courts misinterpreted their own treaty would be precisely the sort of "interference with the authority of another sovereign," *Am. Banana Co. v. United Fruit Co.*, 213 U.S. 347, 356 (1909), that the doctrine of comity was designed to guard against.

### C. Issue Preclusion Furthers the Purpose of International Arbitration, Which Is to Resolve Disputes Expeditiously.

A third reason to give issue-preclusive effect to the decisions of the primary jurisdiction is the strong federal policy favoring arbitration to resolve disputes arising in international commerce. *Mitsubishi Motors,* 473 U.S. at 631. The "goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements," because of the predictability and expedition conferred by arbitration. *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 520 n.15 (1974). Upending that efficiency would "damage the fabric of international

commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements." *Id.* at 517.

Although expeditious dispute resolution is a central goal of arbitration, *Stileks*, 985 F.3d at 879-80, denying or sidestepping issue preclusion would result in anything but. District courts in this Circuit routinely grant stays of arbitral-award confirmation proceedings where, as here, the award-debtor has initiated set-aside proceedings in the courts of the primary jurisdiction.[8] Such stays permit the district court's enforcement decision to be "informed by the considered judgment of the" primary jurisdiction court confirming the award. *Hulley Enters. Ltd. v. Russian Federation*, 502 F. Supp. 3d 144, 159 (D.D.C. 2020).

But if the enforcement court opts to wait, often (as here) for years, for the decision from the seat of arbitration—yet then does not afford preclusive effect to that decision—the stay becomes a near-guarantee of endless delay. Worse still, fresh consideration of already decided and often complicated foreign or international law

---

[8] *See, e.g.*, *In re Telcordia Techs., Inc. v. Telkom SA, Ltd.*, 95 F. App'x 361 (D.C. Cir. 2004) (affirming district court's decision to "adjourn" enforcement proceeding under the New York Convention, pending the outcome of set-aside proceedings in the primary jurisdiction); *Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-CV-01148 (TSC), 2020 U.S. Dist. LEXIS 12794, *5-15 (D.D.C. Jan. 27, 2020) (staying confirmation proceeding, under the New York Convention, pending the outcome of the set-aside proceedings in the primary jurisdiction); *Gretton Ltd. v. Republic of Uzbekistan*, No. CV 18-1755 (JEB), 2019 U.S. Dist. LEXIS 18990, *19-20 (D.D.C. Feb. 6, 2019) (same); *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 191-92 (D.D.C. 2016) (same); *Getma Int'l v. Republic of Guinea*, 142 F. Supp. 3d 110, 119 (D.D.C. 2015) (same).

issues will necessarily consume more of the courts' and the parties' time and resources than the straightforward assessment of whether the primary jurisdiction decision meets well-established preclusion criteria. To "achieve [the] consistency and efficiency in dispute resolution" promised by international arbitration, which is essential "in an ever more intertwined and global world," settled rules of issue preclusion should apply to final decisions of courts in the primary jurisdiction confirming arbitral awards. Nazzini, *supra*, at 632.

Accordingly, this Court should not avoid the issue, as the court below did. Instead, it should hold that the U.S. procedural principle of issue preclusion forbids the Russian Federation, as a party to the prior proceeding, from re-litigating issues of fact or law seeking to set aside the Dutch arbitral award that were actually litigated and necessarily determined against it in a prior Dutch confirmation decision that was final, valid, and on the merits.

## CONCLUSION

The judgment should be affirmed by applying the principle of issue preclusion to the Dutch courts' resolution of the Russian Federation's challenges.

Respectfully submitted,

/s/Hyland Hunt

Hyland Hunt
Ruthanne M. Deutsch
DEUTSCH HUNT PLLC
300 New Jersey Ave. NW, Ste. 900
Washington, DC 20001
(202) 868-6915
hhunt@deutschhunt.com

*Counsel for* Amici Curiae

May 8, 2024

## CERTIFICATE OF COMPLIANCE

This amicus curiae brief is in 14-point Times New Roman proportional font and contains 5,206 words as counted by Microsoft Word, excluding the items that may be excluded. The brief thus complies with the type-face, style, and volume limitations set forth in Rule 29(a)(5) and 32(a)(5)–(7)(B) of the Federal Rules of Appellate Procedure.



/s/Hyland Hunt
Hyland Hunt

May 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2024, I served the foregoing brief upon all counsel of record by filing a copy of the document with the Clerk through the Court's electronic docketing system:

/s/Hyland Hunt
Hyland Hunt